IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TRACY L. PHILLIPS, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. CIV-20-377-RAW-KEW |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
|     **Defendant.** | ) |

## REPORT AND RECOMMENDATION

The claimant Tracy L. Phillips requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-seven years old at the time of the administrative hearing (Tr. 34). He completed high school while taking some special education courses, and has worked as a laborer (Tr. 24, 230). The claimant alleges that he has been unable to work since December 1, 2015, due to a learning disability and back problems (Tr. 229).

## Procedural History

On December 22, 2017, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Lantz McClain held an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 2, 2020 (Tr. 10-25). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined

in 20 C.F.R. §§ 404.1567(b) & 416.967(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, and he could sit and stand/walk each for six hours in an eight-hour workday. Additionally, the ALJ limited the claimant to simple, repetitive tasks, and only occasional interaction with supervisors, coworkers, or the public (Tr. 16). The ALJ thus concluded that although the claimant could not return to his past relevant work as a laborer, he was nevertheless not disabled because there was other work he could perform, *i. e.*, laundry sorter and folder (Tr. 24-25).

## Review

The claimant contends that the ALJ erred by failing to account for all his impairments in formulating the RFC, specifically with regard to the evidence related to his mental impairments and as to the consistency of his statements. The undersigned Magistrate Judge agrees with the claimant's contention that the ALJ failed to properly assess his RFC and recommends that the decision of the Commissioner be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of coronary artery disease, status post stenting; hypertension; degenerative disc disease; depression; and low IQ and history of learning disability; as well as a non-severe history of substance abuse (Tr. 13). The relevant medical evidence as to this appeal and the claimant's mental impairments reveals that the claimant had 3 inpatient hospitalizations for suicidal ideation from 2013 through 2017. In 2013, the claimant was hospitalized from August 6 through August 9 for suicidal ideation with a vague plan that appeared to involve a gun (Tr. 476-482). He was having a hard time and felt like he was a burden to his children (Tr. 476).

His discharge diagnosis at that time was major depressive disorder, single episode, moderate (Tr. 483).

In 2016, the claimant was admitted to Creoks Mental Health Center from January 8 through January 12 after he reported suicidal ideation after breaking up with his girlfriend of eight years (Tr. 284-294). He was again admitted from July 18, 2017 through July 25, 2017 for suicidal ideation, with notes on discharge reflecting that he was stable and ready to transition to a lesser level of care (Tr. 307). The claimant reported he had witnessed a cousin being shot five weeks prior to this hospitalization (Tr. 312). Following this inpatient admission, the claimant was receiving outpatient treatment from Creoks for major depressive disorder, recurrent, severe, without psychotic features, and PTSD. In April 2018, the claimant was still suicidal, needing medications again, and not sleeping well (Tr. 401). However, he was discharged in August 2018 after making minimal recovery or improvement progress and failing to present for appointments (Tr. 332-334).

On June 14, 2018, the claimant underwent a physical exam with Dr. Christopher Sudduth, M.D. Dr. Sudduth noted the claimant's blood pressure was 189/114 but was in no acute distress (Tr. 465). Of note, the claimant had a decreased range of motion of the lumbar spine with lumbar spine pain on range of motion, as well as a positive straight leg raise test bilaterally, and while he could stand and balance, he could not hop on either foot bilaterally (Tr. 467-470). The claimant's blood pressure was 176/127 in April 2019, despite further medication management (Tr. 503). He then suffered cardiac arrest secondary to a myocardial infarction on May 24, 2019 (Tr. 613, 623-624).

On August 7, 2018, Dr. Susan M. Linde, Ph.D., conducted a mental status examination and psychological evaluation with WAIS IV (Tr. 493-499). Dr. Linde found that the claimant had a full-scale IQ of 83, noting that his ability to reason with both verbal and spatial material appeared to be intact but that his working memory and visual-motor integration were below average (Tr. 496-498). She found his intellectual potential for employment was normal, but that he may experience difficulty with complex mental tasks, and that low levels of education, training, and verbal skills would limit his employment options (Tr. 497). She noted that he was linear and logical, that he displayed no evidence of psychotic thoughts, and that his responses were relevant (Tr. 497). In her summary, Dr. Linde found that the claimant's ability to understand, communicate, and remember was like most adults, but that he would be expected to have difficulty with concentration, persisting with difficult tasks, and adapting to the demands of a work environment (Tr. 498). She indicated that depression contributed to his symptoms, and further noted that he had a below normal social interaction level (Tr. 498). She found his prognosis was guarded even given proper treatment and medication (Tr. 498). She assessed him with major depression, recurrent, moderate, as well as a history of cannabis abuse and nicotine dependence (Tr. 498).

When questioned about his mental impairments at the administrative hearing, the claimant testified that pain, reading, and spelling were real problems, and that he has bad anxiety around people (Tr. 39, 44). There was discussion at the hearing about his three inpatient hospitalizations, which he attributed to depression and agreed he had experienced suicidal ideation prior to those three stays (Tr. 39-42). He testified that he has a tendency

to isolate and difficulty sleeping (Tr. 44). When asked about whether he had problems concentrating, the claimant responded, "Could you repeat the question?" and when the representative asked if he had problems staying on task, he responded that he gets disoriented (Tr. 48). The representative then asked him about his ability to stay on task and finish things, he answered, "My intent is to stay until the job is done. It might take a while, though." (Tr. 48). When asked about changes in tasks, he responded, "Patience is a big issue" (Tr. 48). When the vocational expert ("VE") was discussing jobs the claimant could perform, the claimant's representative raised the issue of his guarded prognosis. The representative stated that he believed that "guarded" meant the claimant was unlikely to change, while the ALJ stated that he had to interpret things in terms of vocational terms or else "we can sure find a lot more peopled disabled on that standard" (Tr. 53). The VE's opinion was that a guarded prognosis meant "an individual over a long period of time would have difficulty being consistent in work like activity and being successful in a job" (Tr. 56).

Upon reviewing the claimant's record in August 2018, Dr. Cathy Word, Ph.D., determined initially that the claimant had some moderate limitations in the areas of functioning, but that he could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work environment (Tr. 79-81). On reconsideration, Dr. Jason Gunter, Ph.D., agreed she had some moderate limitations but found she was able to perform simple and more complex tasks of one to four steps with routine supervision, she was able to interact appropriately with coworkers and supervisors and for superficial public contact, and she could adapt to a work setting and some changes in work settings

(Tr. 97-99). Both Dr. Word and Dr. Gunter had the benefit of Dr. Linde's assessment, and in identical summaries they noted the claimant's WAIS IV results, then recited the normal findings from the exam, *e.g.*, normal communication and linear and logical though processes, but did not mention his difficulties with concentrating, persisting, and adapting, nor did they acknowledge his guarded prognosis; instead, they noted that the claimant's symptoms had somewhat improved (Tr. 76, 94).

In his written opinion at step four, the ALJ summarized the claimant's hearing testimony, as well the medical evidence in the record (Tr. 16-24).  As to his mental impairments, the ALJ noted the claimant's history of inpatient treatment from 2013 through 2017, as well as his 2018 discharge due to noncompliance, with minimal improvement (Tr. 18-19).  The ALJ then asserted that, "[e]ven with medication non-compliance, symptoms of depression, and trouble sleeping, the CREOKS mental status examinations showed the claimant has adequate memory and attention, normal appearance, and fair judgment." (Tr. 19).  The ALJ then noted Dr. Linde's examination of the claimant, stating that he found her medical opinion to be unpersuasive (Tr. 19-20). The ALJ noted the claimant's history of inpatient treatment but asserted that a "careful review" revealed only intermittent medication and medication management appointment compliance (Tr. 20-21).  He then concluded that, despite failing to keep treatment appointments, making no progress with his mental health treatment, and medication non-compliance, he nevertheless displayed adequate memory and attention, normal appearance, and fair judgment (Tr. 21).  The ALJ then asserted that the claimant was not further limited, despite his noncompliance (Tr. 21). As to Dr. Linde's opinion, the ALJ: (i) noted the guarded prognosis, then asserted that the

claimant's periods of medication and mental health treatment noncompliance were not "significant periods"; (ii) found that because his mental health symptoms had somewhat improved following hospitalization, the record did not clearly show that he would be unable to adapt to simple, repetitive tasks; and (iii) concluded that his below normal social interaction did not preclude occasional interaction with supervisors, coworkers, and the public (Tr. 22). Additionally, the ALJ found that because the claimant testified that his intent is to stay until a job is done (without recognize the statement that it "might take a while" (Tr. 48)), Dr. Linde's noted concerns regarding concentration, persistence, and pace were unpersuasive (Tr. 22). The ALJ then summarized the state reviewing physician opinions as to the claimant's mental impairments, finding them persuasive and supportive of only mild to moderate limitations because they had the benefit of most of the medical record to review (Tr. 23). He reiterated that the claimant's testimony was not consistent with the objective evidence and that Dr. Linde's opinion was not persuasive, while the opinions of Dr. Word and Dr. Gunter were (Tr. 23). He then determined that the claimant was not disabled at step five (Tr. 24-25).

  The claimant first contends that the ALJ failed to properly account for his mental impairments at step four, particularly as to his evaluation of Dr. Linde's opinion and how that should have affected the RFC. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical

findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to this factor, the ALJ used portions of the medical record to support his findings, focusing on the "normal" findings while downplaying or ignoring the claimant's limitations and particularly his history of numerous inpatient hospitalizations. The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the

record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Here, the ALJ found Dr. Linde's opinion inconsistent with the medical evidence, citing only to the claimant's testimony that he "intended" to complete tasks. This ignores not only the claimant's admission that tasks still might take him a while but also that Dr. Linde's finding was based on an objective exam rather than the claimant's good intentions. Nor does the ALJ address how the claimant's bouts of noncompliance with mental health treatment and medication was consistent with his ability to maintain employment even if he could obtain it. *See McCleave v. Colvin,* 2013 WL 4840477, at *6 n. 6 (W.D. Okla. Sept. 10, 2013) ("Additionally, the ALJ found Plaintiff's subjective complaints not credible in part because of evidence of her noncompliance with prescribed psychotropic medications. However, the ALJ did not consider whether Plaintiff had an acceptable reason for failing to follow her prescribed treatment, *which could include her bipolar disorder*.") (emphasis added) (*citing* 20 C.F.R. §§ 404.1530(c), 416.930(c) *and Jelinek v. Astrue,* 662 F.3d 805, 814 (7th Cir. 2011) ("ALJ's assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medication supports an adverse credibility inference.")); *see also Pate-Fires v. Astrue*, 564 F.3d 935, 945-946 (8th Cir. 2009) ("[T]he ALJ failed to make the critical distinction between Pate-Fires's awareness of the need to take her medication and the question whether he[r] noncompliance with her medication was a medically-determinable symptom of her mental illness.... [T]he evidence overwhelmingly demonstrates that Pate-Fires's noncompliance was attributable to her mental illness.").

Incidentally, the ALJ additionally failed to credit the consistency in the record regarding the claimant's pressured speech. Furthermore, the ALJ's reliance on the state reviewing physician opinions as more persuasive is of concern because their evaluations omitted any reference to the limitations Dr. Linde raised in her evaluation. *See, e.g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."); *see also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") (citation omitted); *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") (citation omitted). The ALJ thus failed to provide a proper explanation of the persuasiveness of Dr. Linde's opinion as to the supportability and consistency factors, and thus committed reversible error.

The undersigned Magistrate Judge notes the claimant additionally contends that the ALJ failed to properly account for the Global Assessment of Functioning ("GAF") scores in the record and that he should have given them more weight. In this case, the ALJ noted that there were GAF scores contained in the record, then stated that he had considered them but that they were not determinative of the claimant's RFC as they were assessments of functioning at a specific time (Tr. 23). Because the record reflects that the claimant had

scores below 50 four times out of six times from 2013 through 2018, the ALJ likely should have addressed why they did not indicate concerns related to the claimant's ability to keep a job. *Beck v. Kijakazi*, 2022 WL 239451, at *9 (D. N.M. July 4, 2022) ("These low scores [of 49-50 over three years] are consistent with serious symptoms and/or serious impairment in social and occupational functioning which the Tenth Circuit considers relevant and concerning evidence related to a claimant's ability to keep a job.") (*citing Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (considering GAF scores and expressing "concern" with scores of 46 and 50); *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) (unpublished) ("Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work ..." but "[a] GAF score of fifty or less, ... does suggest an inability to keep a job.")).

Indeed, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The Court must be able to follow the logic of his analysis, and here it cannot in light of the omissions and obfuscations. *See Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.") (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)).

Finally, the claimant contends that the ALJ failed to properly evaluate the consistency of his statements. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary,* 695 F.3d at 1166-67 (10th Cir. 2012), citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

The claimant contends that the ALJ's analysis of his subjective statements failed to take into account his history of inpatient treatment, the involvement of psychological disorders with his condition, and his general isolation except for contact with his mother, brother, and one friend. The undersigned Magistrate Judge agrees that the ALJ failed to properly evaluate the Defendant's statements and finds that they should be properly evaluated in whole on remand, particularly as to whether his mental impairments contributed to his noncompliance with mental health treatment and medication.

Because the ALJ failed to properly assess the claimant's RFC, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis of *all* the evidence related to the claimant's impairments. This should include the effect of Dr. Linde's "guarded" prognosis of the claimant and how that might affect a claimant's RFC and any jobs identified at step five. If such analysis on remand results in any adjustment

to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 26th day of August, 2022.

_____
**KIMBERLY E. WEST**
**UNITED STATES MAGISTRATE JUDGE**